IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHRISTOPHER JAY SCAPEROTTA, #A6083262,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KAUAI COMMUNITY CORRECTIONAL CENTER, *et al.*,<br><br>　　　　　　Defendants. | Civ. No. 20-00549 JMS-KJM<br><br>ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

## ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND

Before the court is Plaintiff Christopher Jay Scaperotta's ("Scaperotta") Prisoner Civil Rights Complaint ("Complaint")[1] brought pursuant to 42 U.S.C. § 1983.[2] ECF No. 1. Scaperotta alleges that Defendants, the Kauai

---

[1] The Complaint includes Scaperotta's original December 11, 2020 filing, ECF No. 1, and the "Addendum to Complaint" that the Clerk's Office received and filed on February 4, 2021, ECF No. 12.

[2] This is one of eight complaints Scaperotta filed between December 10, 2020, and December 11, 2020. *See also Scaperotta v. Kauai Police Dep't*, No. 20-00542 LEK-KJM (D. Haw.); *Scaperotta v. Rhue*, No. 20-00544 DKW-KJM (D. Haw.); *Scaperotta v. State of Vermont*, No. 20-00545 JMS-RT (D. Haw.); *Scaperotta v. Kauai Police Dep't*, No. 20-00546 DKW-RT (D. Haw.); *Scaperotta v. Kauai Cmty. Corr. Ctr.*, No. 20-00548 DKW-RT (D. Haw.); *Scaperotta v. Kauai Cmty. Corr. Ctr.*, No. 20-00549 JMS-KJM (D. Haw.); *Scaperotta v. Wagatsuma*, No. 20-00551 JAO-RT (D. Haw.).

Community Correctional Center ("KCCC"), Jack Viohle, and Dr. Charles, violated his constitutional rights.³  *Id.* at PageID ## 1–2.  Scaperotta is currently incarcerated at the KCCC.  For the following reasons, the Complaint is DISMISSED pursuant to 28 U.S.C. §§ 1915(e) and 1915A(a), with partial leave granted to amend.

## I. STATUTORY SCREENING

The court is required to screen all prisoner pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).  *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018) (per curiam).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, a complaint must "contain sufficient factual matter,

---

³ Scaperotta cites the First, Sixth, Eighth, Thirteenth, and Fourteenth Amendments.  *See* ECF No. 1 at PageID ## 2, 5–7; ECF No. 12 at PageID ## 58–60.  The Sixth Amendment (addressing a criminal defendant's rights) and the Thirteenth Amendment (abolishing slavery) have no apparent relevance here.

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

Rule 12 is read in conjunction with Rule 8(a)(2) when screening a complaint. Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see* Fed. R. Civ. P. 8(a)(2) and (d)(1). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). The "mere possibility of misconduct," or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678–79 (citations omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130.

3

When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. SCAPEROTTA'S CLAIMS[4]

In Count I, Scaperotta makes various factual allegations about events at the KCCC during the fall of an unspecified year.[5] ECF No. 1 at PageID # 5. He claims that: (1) another inmate "assaulted and harassed" him; (2) unidentified prison officials moved him to a cell with a broken sink; (3) unnamed prison officials moved him to a cell with no bunk; and (4) an unspecified adult correction officer ("ACO") assaulted him. *Id.*

Scaperotta alleges in Count II that eight unidentified ACOs held him down, lowered his pants, and injected him with Haldol and Ativan in late October of an unspecified year. *Id.* at PageID # 6. He also claims that prison officials transferred him to the Oahu Community Correctional Center ("OCCC") "against [his] will." *Id.*

---

[4] Scaperotta's factual allegations are accepted as true. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[5] In one of his other actions, Scaperotta claims that he has been incarcerated at the KCCC approximately six times during the last six years. *See* Complaint at PageID # 9, *Scaperotta v. Kauai Cmty. Corr. Ctr.*, Civ. No. 20-00550 JMS-RT (D. Haw. Dec. 11, 2020), ECF No. 1.

Scaperotta alleges in Count III that Defendants Viohle and Dr. Charles transferred him to the OCCC. *Id.* at PageID # 7. Upon arriving at the OCCC, Scaperotta was allegedly housed in the "psych[] ward." *Id.*

Scaperotta alleges in Count IV[6] that ACO Murin, who is not named as a Defendant, looked at his legal documents after he returned to the KCCC on January 27, 2021. ECF No. 12 at PageID # 58. Scaperotta claims that these documents were "damaged," missing pages, and "in disarray" when they were returned to him. *Id.* He also claims that a pen went missing and his glasses were broken. *Id.*

In Count V, Scaperotta alleges that, upon his return to the KCCC, unidentified ACOs said they did not know where his cell property, including legal documents, personal hygiene items, and clothing, were. *Id.* at PageID # 59.

Finally, Scaperotta alleges in Count VI that the sink in his cell is clogged and broken. *Id.* at PageID # 60. Scaperotta claims that he is not receiving enough drinking water. *Id.* Scaperotta also claims that he asked for maintenance, cleaning supplies, and water, but he has received "no relief." *Id.*

---

[6] Scaperotta included three additional counts in his February 4, 2021 Addendum. *See* ECF No. 12. He did not, however, separately number these counts. For ease of reference, the Court consecutively numbers them in the order that they are included in the Addendum.

Scaperotta seeks $100 million in "compensatory and restitutional damages," unspecified injunctive relief, an "out of court settlement," "retraining of staff," "restraining orders," and a "letter of apology." ECF No. 1 at PageID # 8.

## III.  DISCUSSION

**A.     Legal Framework for Claims Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Belgau v. Inslee*, 975 F.3d 940, 946 (9th Cir. 2020).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury.").  "'A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

6

### B.  Eleventh Amendment Immunity

Scaperotta names as Defendants the KCCC, Viohle, and Dr. Charles in their official capacities.  ECF No. 1 at PageID ## 1–2.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities."  *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

Scaperotta's claims for money damages against the KCCC, and Viohle and Dr. Charles in their official capacities are barred by the Eleventh Amendment and therefore DISMISSED with prejudice.  *See Rowan v. Dep't of Pub. Safety O.C.C.C.*, 2019 WL 637764, at *2 (D. Haw. Feb. 14, 2019) ("Neither the Hawaii Department of Public Safety (DPS) . . . nor OCCC, a jail, are . . . subject to suit under the Eleventh Amendment."); *Penque v. Dep't of Pub. Safety*, 2020 WL 5984055, at *3 (D. Haw. Oct. 8, 2020) (concluding that claims for

monetary damages against prison official in his official capacity were barred by the Eleventh Amendment). Scaperotta may amend his pleading, however, to name a proper defendant or defendants.[7] To the extent Scaperotta seeks damages, he must name in his or her individual capacity a defendant or defendants who allegedly deprived him of rights secured by the Constitution or federal statutes. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities").

## C.     Improper Joinder

A party asserting a claim may join, as independent or alternative claims, as many claims as it has against an opposing party. Fed. R. Civ. P. 18. "To name different defendants in the same lawsuit, however, a plaintiff must satisfy Rule 20, governing joinder of parties." *Weeks v. Espinda*, 2010 WL 2218631, at *3 (D. Haw. June 2, 2010). Rule 20(a)(2) allows joinder of defendants only if the following two requirements are met: (1) any right to relief is asserted

---

[7] Although "courts have recognized an exception to the Eleventh Amendment bar for suits for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law," *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000), Scaperotta does not allege that he is seeking to enjoin an ongoing violation of federal law. Moreover, Scaperotta may not seek injunctive relief based on events that allegedly occurred at the OCCC, because he is no longer incarcerated there. *See Dilley v. Gunn*, 64 F.3d 1365, 1368–69 (9th Cir. 1995) (concluding that prisoner's claims for injunctive relief were moot because he was transferred to another prison and had not demonstrated a reasonable expectation that he would be transferred back).

against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20(a)(2)(A)–(B); *Stribling v. Tobias*, 690 F. App'x 972, 973 (9th Cir. 2017). Unrelated claims involving different defendants belong in different suits. *See What v. Honolulu Police Dep't*, 2014 WL 176610, at *4–5 (D. Haw. Jan. 13, 2014).

      Scaperotta attempts a variety of unrelated claims in this action. He alleges in Count I that: (1) an unidentified inmate assaulted and harassed him; (2) unnamed prison officials moved him to a cell without a sink; (3) unspecified prison officials moved him to a cell without a bunk; and (4) an unnamed ACO assaulted him. ECF No. 1 at PageID # 5. Scaperotta alleges in Count II that: (1) eight unidentified ACOs held him down, pulled down his pants, and injected him with Haldol and Ativan; and (2) prison officials transferred him from the KCCC to the OCCC, where he was housed in the "psych[] ward." *Id.* at PageID # 6. In Count III, Scaperotta complains about being transferred to the OCCC and housed in the "psych[] ward." *Id.* at PageID # 7. Scaperotta alleges in Count IV that his legal documents were returned to him "in disarray, damaged, and missing [pages]." ECF No. 12 at PageID # 58. He alleges in Count V that unnamed ACOs told him they did not know if his personal effects were still at the KCCC. *Id.* at PageID

# 59. Finally, Scaperotta alleges in Count VI that the sink in his cell is broken and he does not receive adequate water. *Id.* at PageID # 60.

If Scaperotta chooses to file an amended pleading, any claim asserted therein must be permitted by either Rule 18 or Rule 20. Scaperotta may state a single claim against a single defendant. Pursuant to Rule 18, Scaperotta may then add any additional claims to his action that are against the same defendant. Fed. R. Civ. P. 18. Scaperotta may also add any additional claims against other defendants, if those claims arise from the same transaction, occurrence, or series of transactions as his original claim. Fed. R. Civ. P. 20(a)(2).

Scaperotta may not pursue a combination of unrelated claims in a single suit. *See Char v. Kaiser Hosp.*, 2019 WL 80890, at *3 (D. Haw. Jan. 2, 2019) ("Unrelated claims involving different defendants must be brought in separate actions."). He may, however, raise any unrelated claims in a separate action or actions. *See D'Agirbaud v. Kam*, 2020 WL 3258408, at *5 (D. Haw. June 16, 2020) (explaining that dismissing complaint for misjoinder allowed plaintiff "to decide which *related* claims he will pursue in *this* action, and which claims he will bring in a new action"). Any attempt to join claims that are not permitted by the Federal Rules of Civil Procedure will result in those claims being dismissed as improperly joined.

**D. Rule 8**

Rule 8 states that a pleading "must contain" a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Scaperotta's various claims do not satisfy Rule 8. Scaperotta fails to allege the year when many of the alleged incidents occurred. *See, e.g.*, ECF No. 1 at PageID # 5 (stating that an inmate assaulted and harassed him in "mid September"); *id.* (claiming that an ACO assaulted him, but not saying when); *id.* at PageID # 6 (stating that "8 ACO's" held him down "[a]round October 20th–22nd"). And, for most of his claims, Scaperotta does not link the alleged incident to any particular prison official. *See, e.g.*, ECF No. 1 at PageID # 5 (not saying which prison official allegedly denied him water); *id.* (not saying which ACO allegedly assaulted him); *id.* at PageID # 6 (not saying which ACOs allegedly held

11

him down). If Scaperotta chooses to file an amended pleading, he must comply with Rule 8 by describing who allegedly violated his rights, and when and how they did so. Scaperotta must also consider the following legal standards.

**E. First Amendment**

Scaperotta checks boxes indicating that prison officials unlawfully retaliated against him. *See* ECF No. 1 at PageID ## 5, 7.

The First Amendment guarantees a prisoner the right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts. *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). Retaliation against prisoners for their exercise of these rights "is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five basic elements: (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct, and that such action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Id.* Scaperotta fails to allege facts regarding any of these elements.

## F.  Eighth Amendment

Scaperotta claims that the conditions of confinement at the KCCC violated the Eighth Amendment.[8]  ECF No. 1 at PageID # 5.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted).  In its prohibition on "cruel and unusual punishments," the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]"  *Id.* (internal quotation marks and citations omitted); *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).

---

[8] Scaperotta does not say exactly when the alleged incidents occurred.  See ECF No. 1 at PageID # 5.  If they occurred after Scaperotta was convicted, his claims are properly raised under the Eighth Amendment.  If the events occurred before Scaperotta was convicted, however, they must be raised, if at all, under the Fourteenth Amendment.  *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc).  Under the Fourteenth Amendment, the inquiry focuses on whether the conditions of confinement amount to "punishment."  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Id.* at 539.

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious"—that is, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'" *Farmer*, 511 U.S. at 834; *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Second, the prison official must have a sufficiently culpable state of mind. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Farmer*, 511 U.S. at 834 (citations omitted). Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Scaperotta fails to allege a "sufficiently serious" violation. Although Scaperotta claims that the sink was broken in his cell, he has not plausibly alleged a denial of the minimal civilized measure of life's necessities. He does not say how long he had to wait for water, how often he received it, or how much he received. Likewise, while Scaperotta claims that he was housed in a cell with "no bunk," he fails to allege facts showing a serious violation of his rights. For example, he does not say how long he was housed in this particular cell. Nor does

Scaperotta allege that any prison official knowingly disregarded an excessive risk to his health and safety. He fails, therefore, to state a plausible claim for relief under the Eighth Amendment.

**G. Fourteenth Amendment**

Scaperotta appears to claim that prison officials violated his Fourteenth Amendment rights by depriving him of his property without due process of law. ECF No. 12 at PageID ## 58–59.

Even assuming the truth of Scaperotta's allegations, he fails to state a claim because he does not allege that his property was taken pursuant to a policy or otherwise authorized by law. *See Finefeuiaki v. Maui Police Dep't*, 2018 WL 4839001, at *5 (D. Haw. Oct. 4, 2018). Moreover, an adequate post-deprivation remedy is available to him under state law. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) ("[A] negligent or intentional deprivation of a prisoner's property fails to state a claim under section 1983 if the state has an adequate post deprivation remedy."); *see also Finefeuiaki*, 2018 WL 4839001, at *1 ("Hawaii law provides an adequate post-deprivation remedy for the loss of . . . property"); Haw. Rev. Stat. § 662-2 ("The State hereby waives its immunity for

15

liability for the torts of its employees and shall be liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."). Scaperotta fails to state a claim based on the alleged deprivation of his property.

## IV.  **LEAVE TO AMEND**

The Complaint is DISMISSED with partial leave granted to amend. Scaperotta may file an amended complaint on or before March 8, 2021, that names a proper defendant and attempts to cure the deficiencies in his claims. Scaperotta may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the original Complaint. Claims that do not properly relate to his original pleading are subject to dismissal.

Scaperotta must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.3, which require an amended complaint to be complete itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form. An amended complaint will supersede the preceding complaint. *See Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See*

*Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012). If Scaperotta fails to timely file an amended complaint that cures the deficiencies in his claims, this action may be dismissed and that dismissal may count as a "strike" under 28 U.S.C. § 1915(g).[9]

## V. CONCLUSION

(1) The Complaint is DISMISSED for failure to state a colorable claim for relief pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

(2) Scaperotta's claims against the KCCC, and Viohle and Dr. Charles in their official capacities are DISMISSED with prejudice.

(3) If Scaperotta chooses to file an amended pleading, he must decide which *related* claims he will pursue in *this* action, which claims he will bring in a new action or actions, and which claims he may forgo with the benefit of the Court's analysis of his claims.

---

[9] Section 1915 (g) bars a civil action by a prisoner proceeding in forma pauperis:

if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

(4)  Scaperotta may file an amended pleading that attempts to cure the deficiencies in his claims on or before March 8, 2021.

(5)  The Clerk is directed to send Scaperotta a blank prisoner civil rights complaint form so that he can comply with the directions in this Order if he chooses to amend his complaint.

(6)  If Scaperotta fails to timely file an amended complaint that cures the deficiencies in his claims, this action may be AUTOMATICALLY DISMISSED without further notice, and that dismissal may count as a "strike" under 28 U.S.C. § 1915(g).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 5, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Scaperotta v. Kauai Cmty. Corr. Ctr., et al.*, Civ. No. 20-00549 JMS-KJM, Order Dismissing Complaint With Partial Leave To Amend